1

2

3

4

5

6

7

8                                   UNITED STATES DISTRICT COURT

9                              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   WESLEY CORBERA, *as executor of the*              No.  2:21–cv–1998–WBS–KJN
     *Estate of Harrison Breedlove*,
12                                                     ORDER ON MOTION TO COMPEL
                          Plaintiff,
                                                      (ECF No. 10)
13        v.

14   HENRY JAMES TAYLOR,

15                        Defendant.

16

17          On May 24, 2022, the court held a remote hearing on plaintiff's motion to compel

18   discovery from non-party the County of Shasta in response to plaintiff's Rule 45 subpoena.  (ECF

19   No. 10.)  Plaintiff and the County filed a Joint Statement and an Amended Joint Statement

20   regarding the present discovery dispute.  (ECF Nos. 11, 14.)  At the hearing, David Fiol appeared

21   for plaintiff, and Christopher Pisano appeared for the County.  There was no appearance by or on

22   behalf of the sole defendant, Henry James Taylor.[1]  (ECF No. 15.)

23   _____

24   [1] **In all future motions implicating defendant Taylor's interests—even if not formally
     involving him—the court expects defense counsel to attend any hearings on such motions.**
25   The Courtroom Deputy sent instructions for joining the Zoom hearing to all counsel of record in
     this case—including the sole defense counsel of record, Caitlyn Andrijich—and received no
26   bounce-backs.  At the hearing, plaintiff's counsel reported that Ms. Andrijich has left the firm that
     is representing defendant Taylor but that one of the firm's principals is still representing
27   Mr. Taylor.  **Plaintiff's counsel is requested to serve a copy of this order on present defense
     counsel.  In order to ensure receipt of filings, orders, and hearing notifications in this case,**
28   **defense counsel must enter a new Notice of Appearance as soon as practicable.**

1    For the following reasons, the court GRANTS IN PART and DENIES IN PART

2  plaintiff's motion.

3  **BACKGROUND**

4    Plaintiff Wesley Corbera is the administrator of the Estate of Harrison Breedlove (his half-

5  brother), who was killed in a traffic accident involving defendant Henry Taylor—a deputy with

6  the Shasta County Sheriff's Department ("SCSD") at the time.  The present discovery dispute

7  relates to plaintiff's subpoena duces tecum served on Taylor's now-former employer, the County

8  of Shasta—which is not a party to this lawsuit.  Plaintiff seeks to compel the County to produce

9  documents responsive to 17 subpoena requests largely in service of a potential Monell claim he

10  might choose to add at a later point.

11    **A. Complaint Allegations**

12    According to the complaint, decedent Mr. Breedlove was killed on November 6, 2019,

13  when the car he was riding in was struck by defendant Taylor's patrol car after Taylor lost control

14  upon hitting a deer in the roadway at high speed.  That evening, defendant Taylor was responding

15  as a second back-up unit to a non-emergency dispatch for a report of possible trespassing.  (ECF

16  No. 1 ¶¶ 24, 26.)  In full darkness around 8:00 P.M., in the middle of deer season, Taylor

17  accelerated to a top speed of over 105 mph traveling down an unlit, undivided two-lane state

18  highway (CA Route 299) without his emergency lights or sirens on.  (Id. ¶¶ 32, 35, 39, 41, 43.)

19    There was no indication that this was a "Code 3" emergency response situation, which

20  would have permitted such excess speeds.  (Id. ¶¶ 23-24, 27.)  And in any event, Taylor did not

21  attempt to comply with SCSD Policy 308.4, which required deputies to first inform the dispatcher

22  of their Code 3 decision in order to initiate supervisory review.  (Id. ¶¶ 36-37.)

23    Meanwhile, Mr. Breedlove was riding as a passenger in a friend's sedan, traveling at

24  about 55 mph in the opposite direction as Taylor on the same highway.  (Id. ¶ 43.)  With

25  remarkably tragic timing, just as the two cars were about to pass each other, Taylor's patrol car

26  struck a deer at over 109 mph, causing his air bags to deploy.  (Id. ¶¶ 44, 46.)  Taylor lost control

27  of the patrol car, which crossed into the opposite lane, and slammed into Mr. Breedlove's side of

28  ///

2

the sedan.  (Id. ¶¶ 45, 37-51.)  Mr. Breedlove lived for a time but died at the scene.  (Id. ¶ 52; ECF No. 14 at 3.)

**B.  Surrounding Proceedings & Causes of Action**

Plaintiff filed this suit in October 2021, about a year after filing a pure negligence action in state court against both Taylor and the County.  (ECF No. 1; Corbera v. Taylor, No. 195574 (Shasta Cty Super. Ct.).)  In November 2020, the County District Attorney launched a criminal prosecution of Taylor, which is ongoing.  (State v. Taylor, No. 20F7377 (Shasta Cty. Super. Ct.).)  Taylor's criminal trial was originally slated for January 2022 but after two continuances, it is now set to start August 2, 2022.  (ECF No. 14 at 3.)

Based on Taylor's Fifth Amendment rights, all three parties to the state civil suit stipulated to a full stay of the case until "completion of the [criminal] trial."  (ECF No. 14, Exs. 1 & 2.)  The State Court entered the stay on October 15, 2021, and two weeks later plaintiff filed this parallel federal suit.

The operative complaints in both the State Court case and this federal case assert the same two § 1983 causes of action against defendant Taylor under the Fourteenth Amendment's Due Process Clause.  (ECF No. 1 at 10-11; ECF No. 14 at 4.)   The twin § 1983 substantive due process claims are:  (1) a survivorship claim on behalf of decedent's estate for depriving Mr. Breedlove of "the right to be free of unlawful, deliberately indifferent conduct" and "free from deprivation of life, liberty and property without substantive due process"; and (2) a wrongful death claim on behalf of decedent's mother, Patricia Breedlove, via plaintiff Corbera,[2] to be "free of unlawful, reckless, deliberately indifferent, and conscience shocking conduct" and "free from interference with her parent-child relationship" with the decedent.  (ECF No. 1 ¶¶ 56, 60.)

As mentioned, the State Court complaint (unlike the federal complaint) also includes state-law negligence claims.  From the outset in State Court, plaintiff named both Taylor and the County as defendants, asserting the County's vicarious liability for Taylor's negligent vehicle

---

[2] Decedent's mother, Patricia Breedlove, post-deceased him in November 2020; plaintiff Corbera is also the trustee of Patricia Breedlove's estate, and simultaneously brings this action under Cal. Code Civ. Pro. § 377.60(a) to pursue Patricia's surviving wrongful death claims.  (Complaint ¶¶ 7-8, 10.)

1  operation under Cal. Vehicle Code § 17001.  (ECF No. 14 at 6.)

2      In this federal case, Taylor is the only defendant.  Plaintiff represents that by the time he

3  had a sufficient basis to bring a § 1983 action in this court, the six-month deadline to file a state-

4  law tort claim against the County had expired.  (Id.)  Thus, the only claims plaintiff might be able

5  to bring against the County would be Monell claims, which plaintiff represents he "can not state

6  at this time."  (Id.)  Plaintiff candidly acknowledges the current lack of a Monell claim pleaded in

7  the complaint, and the complaint itself states that plaintiff "intends to investigate in the course of

8  discovery whether the County of Shasta is liable" and to seek leave to add Monell claims if he

9  can do so in good faith.  (ECF No. 1 ¶ 14.)

10      In the Amended Joint Statement, plaintiff represents that it was and is his intent to pursue

11  this federal case as the primary litigation, and he plans to consent to a stay of the State Court case

12  for the duration of this action.  (ECF No. 14 at 3, 15 n.1.)

13      On December 21, 2021, again based on Taylor's Fifth Amendment concerns, plaintiff and

14  defendant Taylor agreed to a limited stay of discovery in this action.  As approved by the district

15  judge on December 27, 2021, the parties agreed to stay Taylor's discovery obligations to plaintiff

16  until the earlier of six months or after Taylor no longer faced the risk of criminal prosecution.[3]

17  (ECF No. 9 at 2.)  The parties specifically agreed that "Plaintiff may direct discovery to third

18  parties, but TAYLOR and those third parties retain all rights to object to that discovery on any

19  applicable grounds."  (Id.)

20  **DISCOVERY DISPUTE**

21      This discovery dispute arose because the County of Shasta, which is not currently a party

22  to this action, served objection-only responses to a Rule 45 subpoena plaintiff served on it in

23  March 2022.  (ECF No. 14 at 4.)  The subpoena contains 17 document requests seeking

24  everything from vehicle tracking data and radio dispatches on the night of the incident, to former-

25  deputy Taylor's personnel file and prior accidents or reports of SCSD motor vehicle policy

26  violations, up to information regarding any incidents or discipline related to any deputy's

27

28  [3] When the stipulation was entered, Taylor's criminal trial was still slated for January 2022.

4

1  dangerous driving or motor vehicle policy violations going back to January 2009.

2        Plaintiff acknowledges that the primary aim of this discovery is to obtain any evidence

3  that might support a potential <u>Monell</u> claim.  The County objects on many grounds, most

4  prominently that (A) it should not be burdened with such broad discovery when it is not a party to

5  the action and discovery in both of the civil suits is currently stayed to some degree, and

6  (B) plaintiff should not be allowed to use discovery to fish for claims to bring against the County.

7  **A.  Legal Standard**

8        Rule 45 governs discovery requested of non-parties by subpoena.  "The scope of the

9  discovery that can be requested through a subpoena under Rule 45 is the same as the scope under

10  Rule 26(b)."  <u>Callwave Commc'ns, LLC v. Wavemarket, Inc.</u>, 2014 WL 2918218, at *2 (N.D.

11  Cal. June 26, 2014) (citing Rule 45 Advisory Comm. Note (1970) ("[T]he scope of discovery

12  through a subpoena is the same as that applicable to Rule 34 and other discovery rules.")).

13        Rule 26(b) permits "discovery regarding any nonprivileged matter that is relevant to any

14  party's claim or defense and proportional to the needs of the case . . . ."  As is often noted,

15  relevance for discovery purposes "has been construed broadly to encompass any matter that bears

16  on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in

17  the case."  <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351 (1978).  That said, relevance

18  (for discovery) must be "framed by" the factual allegations in the pleadings, which are "what the

19  [c]ourt looks to in order to measure relevance and proportionality."  <u>Tradeshift, Inc. v.</u>

20  <u>BuyerQuest, Inc.</u>, 2021 WL 2109382, at *2 (N.D. Cal. May 25, 2021).

21        In the event the subpoena recipient responds with written objections, the serving party

22  may then move the court from which the subpoena was issued for an order compelling the

23  commanded discovery.  Fed. R. Civ. P. 45(d)(2)(B)(i).  The party seeking to compel discovery

24  bears the burden of showing the requested discovery is relevant.  <u>Lofton v. Verizon Wireless</u>

25  <u>(VAW) LLC</u>, 308 F.R.D. 276, 281 (N.D. Cal. 2015).  Once relevance is shown, the entity

26  resisting discovery "has the burden to show that discovery should not be allowed, and has the

27  burden of clarifying, explaining, and supporting its objections."  <u>Soto v. Castlerock Farming and</u>

28  <u>Transport, Inc.</u>, 282 F.R.D. 492, 498 (E.D. Cal. 2012) (internal quotation omitted).

1   Still, in the context of compelling discovery from non-parties, the court must take extra

2   precautions to avoid unnecessary discovery burdens.  See Legal Voice v. Stormans Inc., 738 F.3d

3   1178, 1184 (9th Cir. 2013) ("[W]hen a court orders compliance with a subpoena over an

4   objection, 'the order must protect a person who is neither a party nor a party's officer from

5   significant expense resulting from compliance.'" (quoting Fed. R. Civ. P. 45(d)(2)(B)(ii)).

6   "While discovery should not be unnecessarily restricted, discovery is more limited to protect third

7   parties from harassment, inconvenience, or disclosure of confidential documents."  Edwards v.

8   Cal. Dairies, Inc., 2014 WL 2465934 at *2 (E.D. Cal. June 2, 2014) (citing Dart Industries Co.,

9   Inc. v. Westwood Chemical Co., Inc., 649 F.2d 646, 649 (9th Cir. 1980), which noted "the

10  'necessary' restriction may be broader when a nonparty is the target of discovery").

11      Thus, in determining whether and how to enforce the subpoena, the court "balances the

12  relevance of the discovery sought, the requesting party's need, and the potential hardship to the

13  party subject to the subpoena."  Edwards, 2014 WL 2465934 at *2 (quoting Gonzales v. Google,

14  Inc., 234 F.R.D. 674, 679-80 (N.D. Cal. 2006)).

15      **B.  The County's Universal Objections**

16      In the Amended Joint Statement, the parties first present eight "common objections"

17  asserted by the County in response to many of the subpoena requests.  The court addresses at the

18  outset the three common objections universally asserted for every one of the subpoena requests

19  (Common Objections #2, #3, and #4).  The court finds it more useful to address the remaining

20  objections within the context of the specific subpoena requests.

21          1.  Common Objection #2:  Undue Burden

22      The County argues that the requested discovery (really, any discovery at all) is unduly

23  burdensome because (A) discovery is effectively stayed for the actual parties to the parallel civil

24  suits, and (B) plaintiff is improperly using this broad subpoena to unearth evidence to support a

25  potential claim to bring against a non-party.  (ECF No. 14 at 11-15.)  The County proposes that

26  this discovery should wait at least until the resolution of defendant Taylor's criminal trial in

27  August.  (Id. at 11, 13.)  The County reasons that (1) "[a] non-party should not have to bear the

28  primary burden of discovery while the rest of the litigation is essentially on pause," and (2) with

6

1    defendant Taylor under no current obligation to respond to discovery, himself, it is backwards to

2    proceed with <u>Monell</u>-related discovery when the merits of plaintiff's underlying constitutional

3    claims are still uncertain.  (<u>Id.</u> at 12-13.)

4            The court finds the latter argument compelling.  In his eagerness to make some effective

5    use of time while the case is otherwise at a standstill, plaintiff is to a certain degree trying to put

6    the <u>Monell</u>-discovery cart before the individual-discovery horse with this subpoena.  It is well

7    accepted that municipal liability is contingent on an underlying constitutional violation.  <u>See</u>

8    <u>Jackson v. City of Bremerton</u>, 268 F.3d 646, 653 (9th Cir. 2001) ("Neither a municipality nor a

9    supervisor . . . can be held liable under § 1983 where no injury or constitutional violation has

10   occurred."); <u>Quintanilla v. City of Downey</u>, 84 F.3d 353, 355 (9th Cir. 1997) (government entity

11   not liable under § 1983 for acts committed pursuant to government policy or custom unless

12   plaintiff shows the individual actors actually violated his constitutional rights).  Thus, if plaintiff

13   does not turn up sufficient evidence that defendant Taylor acted with at least "deliberate

14   indifference"—and perhaps as much as "intent to harm"—in driving in the dangerous fashion

15   alleged,[4] then discovery as to the County's policies, practices, and overall disciplinary or training

16   measures (and their enforcement) would be for naught.  The court therefore determines that

17   discovery should proceed, for now, with a primary focus on obtaining evidence related to liability

18   of defendant Taylor—the only defendant presently named in the action.

19           The court finds it appropriate at this juncture to enforce the subpoena only as to those

20   requests that relate to defendant Taylor, himself.  Some of the subpoena requests the court

21   enforces in this order might incidentally also provide some factual basis to support a future

22   <u>Monell</u> claim in an amended complaint.  If the responsive production reveals some basis to

23   believe that Taylor's alleged misconduct was not an isolated incident, the court would entertain a

24   future motion to compel broader discovery as to other instances of similar policy violations by

25   other deputies.  However, in the current complaint and in the current motion, plaintiff presents no

26

27   _____
     [4] <u>See</u> <u>McGowan v. Cty. of Kern</u>, 2018 WL 2734970, at *6 (E.D. Cal. June 7, 2018), for
     discussion of the varying degrees of egregiousness required to constitute government action that
28   "shocks the conscience" to prove a substantive due process claim.

1   factual basis to indicate that the County's policies, practices, training, or discipline related to

2   motor vehicle operations contributed to the tragic loss of life in this case.  When pressed at the

3   hearing, plaintiff's counsel confirmed that he is presently unaware of any similar prior motor

4   vehicle accidents involving an on-duty SCSD deputy.

5          The court also "recognizes the difficulty a civil rights plaintiff typically has in obtaining

6   access to information necessary to state a <u>Monell</u> claim at the beginning of the case as such

7   information is often uniquely within the possession of the [municipality]."  <u>Sanders v. City of</u>

8   <u>Nat'l City</u>, 2020 WL 6361932, at *5 (S.D. Cal. Oct. 29, 2020).  (<u>See</u> ECF No. 14 at 9, plaintiff

9   describing his "Catch 22" position.)  The County does not ask the court to hold that <u>Monell</u>-

10  related discovery cannot proceed at any point without a <u>Monell</u> claim actually being pleaded.

11  (<u>See</u> ECF No. 14 at 13, "The County is not arguing that there should be no ability to conduct

12  discovery at any time whatsoever or that plaintiff should have no ability to investigate a potential

13  Monell claim.").  Although there appears to be some support for so holding, the court declines to

14  take such a bright-line approach at this early stage of the case.  <u>Cf.</u> <u>Valenzuela v. City of</u>

15  <u>Calexico</u>, 2015 WL 2184304, at *4-6 (S.D. Cal. May 11, 2015) (denying motion to compel

16  deposition of non-party police chief based on conclusory <u>Monell</u> allegations in complaint that

17  showed plaintiff was engaging in a fishing expedition).

18         Instead, the court remains willing to consider a future request for discovery related to the

19  County's surrounding policies and practices if—perhaps through the discovery being ordered on

20  this current motion—plaintiff can provide some reasonable basis for believing defendant Taylor's

21  conduct was not a one-time aberration.

22         The undersigned therefore denies without prejudice the motion to compel documents

23  responsive to Request Nos. 10–17, all of which request broad swaths of information solely

24  directed to the County's liability.

25              2.   <u>Common Objection #3:  Evading State Court Stay</u>

26         The second common objection the County universally asserts is that plaintiff is attempting

27  to use discovery in this federal action to "evade" the total stay negotiated in the State Court

28  action.  (ECF No. 14 at 16.)  The County suggests that, consistent with its above objection, once

8

1    the stay is lifted in the State Court action, plaintiff should bring its discovery requests against the

2    County there (in State Court) where the County is a party to the suit.  (Id. at 14-15.)

3          The court is not presently persuaded that plaintiff is making an "end-run" around the State

4    Court stay.  Based on plaintiff's counsel's representation that he is no longer going to pursue the

5    State Court action, the court declines to force plaintiff to seek discovery from the County

6    exclusively in State Court.  However, plaintiff will continue to face a steeper path to obtaining

7    discovery from a non-party like the County, given the court's duty to protect non-parties from

8    unnecessarily burdensome requests.

9          On this motion at this time, the existence of a stay in the State Court case does not

10   persuade the court to deny discovery in this case.

11            3.   Common Objection #4:  Privileged and Confidential Information

12         The County's third and final universal objection is that plaintiff "seeks, without a

13   protective order in place, the production of proprietary information, privileged and confidential

14   documents pursuant to the official information privilege."  (ECF No. 14 at 16.)  The County's

15   only explanation of this confusingly-worded objection is that the records sought "contain

16   confidential information regarding third persons, including employment records of County

17   personnel."  (Id. at 17.)

18         To the extent this objection is meant to invoke the official information privilege, it fails to

19   do so.  Hoffman v. Cty. of Los Angeles, 2016 WL 4698939, at *9 (C.D. Cal. Jan. 5, 2016)

20   (rejecting official information privilege asserted without "a declaration or affidavit from a

21   responsible official with personal knowledge of the matters to be attested to in the affidavit"

22   (quoting Soto v. City of Concord, 162 F.R.D. 603, 613 (N.D. Cal. 1995)).  As to the County's

23   generalized confidentiality concerns, those will be addressed by ordering the below production

24   subject to a stipulated protective order to be crafted by the parties.

25   **C.  Remaining Subpoena Requests 1–9**

26         The court now turns to the remaining document requests not directed solely to Monell-

27   related discovery.

28   ///

1        1.  Requests 1 & 2

2        Requests 1 and 2, respectively, seek vehicle tracking data for the SCSD patrol cars

3    responding to the same incident as Taylor and radio dispatch records for a total of 12 hours

4    surrounding the incident.  Aside from the universal objections discussed above, the County's only

5    additional objections to these requests are to No. 1 based on vagueness and privacy grounds.

6        The County's universal undue burden objection is overruled as to Nos. 1 and 2.  The

7    requested material appears readily accessible and is limited to just two deputies other than Taylor

8    (in No. 1) and a small window of time (in No. 2).  Both requests are relevant to defendant

9    Taylor's own liability, even if they might also shed light on how his conduct compared to that of

10   other deputies.  These are not purely Monell-focused discovery requests.

11       The County's privacy objection (Common Objection #5) is also overruled as to Nos. 1

12   and 2.  The County frames Common Objection #5 in terms of avoiding purely Monell-related

13   discovery requests.  (ECF No. 14 at 18, objecting that records "contain confidential and private

14   information regarding county personnel who have nothing to do with the facts of this case.")

15   That argument does not readily apply to these requests for tracking/location data of the patrol cars

16   responding to the same trespassing call as defendant Taylor, or the dispatch communications on

17   the night of the incident.

18       However, the County's vagueness objection to No. 1 is sustained.  (ECF No. 14 at 21.)

19   Based on the parties' agreement at the hearing, Request No. 1 is rephrased to a more limited

20   request for: "Data from the Spillman vehicle tracking system showing the position and/or speeds

21   of vehicles driven by all Shasta County Sheriff's DEPUTIES who responded to the same possible

22   trespassing call that Defendant TAYLOR was responding to at the time of the COLLISION."

23       2.  Request 3

24       Request 3 seeks Taylor's entire personnel file.  In addition to the universal objections

25   discussed above, the County asserts two common objections:  defendant Taylor's privacy

26   interests (Common Objection #7) and California Evidence Code § 1043 (Common Objection #8).

27       As to undue burden, the court sees little burden at all since Taylor's personnel file

28   presumably already exists as a package.  As to relevance, evidence of Taylor's overall "ethics,

10

1    decision-making abilities, and work and safety habits" are relevant to plaintiff's substantive due

2    process claims.  Lewis v. Kern Cty., 2022 U.S. Dist. LEXIS 28465, at *15 (E.D. Cal. Feb. 16,

3    2022) (granting motion to compel withheld portions of personnel records over County's official

4    information privilege, subject to protective order).  **The court therefore compels production of**

5    **defendant Taylor's personnel file, limited to (A) any documents reflecting Taylor being**

6    **reprimanded or disciplined for any purpose and (B) any internal or external complaints**

7    **regarding Taylor's conduct as a SCSD deputy.**

8         The County's objections based on Taylor's privacy interests and California Evidence

9    Code § 1043 are overruled.  Taylor's privacy interests are best asserted by Taylor himself, and in

10   any event are addressed by the limitations added by the court and by making production subject

11   to a forthcoming stipulated protective order.  The County provides no argument to support its flat

12   § 1043 objection (Common Objection #8) other than to incorporate the argument provided—and

13   above rejected—for Common Objection #4.  Again, the County's confidentiality concerns can be

14   addressed by making this production subject to a stipulated protective order.  Moreover,

15   California rules of evidence do not apply, per se, in this federal action.  Kelly v. San Jose, 114

16   F.R.D. 653, 655 (N.D. Cal. 1987) ("State privilege doctrine, whether derived from statutes or

17   court decisions, is not binding on federal courts in these kinds of cases.").  Rather, the interest

18   § 1043 serves in protecting officers' records and information will be balanced against the

19   plaintiff's need for the information.  See id. at 661.

20        The granting of this motion to compel as to Request 3 does not preclude the County from

21   withholding any documents that are privileged—provided the County adequately asserts the

22   relevant privilege and provides a privilege log with sufficient detail to allow plaintiff to assess the

23   privilege claim.

24        3.  Requests 4–7

25        Requests 4–7 all pertain to Taylor's own driving and disciplinary record with SCSD,

26   seeking documents related to his improper operation of any patrol car (No. 4), any prior accidents

27   (No. 5), any determinations of whether his conduct while driving was within or not within policy

28   (No. 6), and any discipline imposed related to his use of a patrol car (No. 7).

To the extent responsive documents exist beyond Taylor's personnel file, the court likewise finds Requests 4–7 relevant and not unduly burdensome.  Prior determinations and discipline based on Taylor's conduct, himself, violating SCSD motor vehicle policies (Nos. 6 & 7) are directly relevant to Taylor's subjective awareness of how dangerously or "counter to policy" he was acting on the night of the collision—key to the substantive due process claims.  Documents shy of actual determinations or discipline but reflecting prior accidents or complaints of improper vehicle operation by Taylor (Nos. 4 & 5) would be likely to lead to evidence of Taylor's patterns of behavior and lack of mistake.

While responsive documents may not necessarily exist all in one place, the County does not explain what burden it faces in performing these fairly narrow searches for the approximately seven-year period when Taylor was employed with SCSD.  (See ECF No. 1 ¶ 16, alleging Taylor's September 2013 hiring.)  To aid in the County's search, however, the court sustains two of the County's vagueness objections.

First, Request 4 is modified to request: "All DOCUMENTS that contain notations regarding Defendant Taylor's improper operation of a PATROL CAR at any time."

Second, Request 5 is modified to request: "All DOCUMENTS that refer or relate to any motor vehicle accident or incident where a PATROL CAR operated by Defendant TAYLOR caused damage to a person or property."

The County's vagueness objections to Requests 6 and 7 are overruled.

   4.  Requests 8 & 9

Requests 8 and 9, respectively, seek documents related to any investigation of the subject collision and documents related to the SCSD's decision to terminate Taylor, which occurred at some point after the collision.  In addition to the three universal objections, the County asserts a § 1043 objection to both Nos. 8 and 9 and an objection based on Taylor's privacy interests for No. 9.

Regarding undue burden, presumably all documents comprising any investigation into the November 6, 2019 collision would already be filed together, and any documents related to such investigation could fairly easily be located.  As to relevance, the SCSD's investigation into the

12

1    subject collision likely contains information bearing directly on defendant Taylor's individual

2    liability.  Likewise, the County does not describe what burden it will face in compiling documents

3    related to the SCSD's decision to terminate defendant Taylor—likely spanning a relatively

4    narrow period of time.  And, in the event that Taylor was terminated as a result of his conduct

5    leading to the collision, the termination decision would likely shed light on the degree of

6    egregiousness of Taylor's conduct.

7            As the court acknowledged at the hearing, Requests 8 and 9 ultimately may be revealed to

8    be overbroad—especially in the event Taylor was terminated for unrelated conduct post-dating

9    the collision.  If counsel cannot reach a compromise on the County's proper production in

10   response to these requests, the court remains available to resolve future disputes either via

11   informal discovery conference or a renewed motion to compel.  As stated at the hearing, the court

12   is generally more inclined toward full production (again, subject to a protective order)—though,

13   as with Request 3, this is not to the exclusion of credible privilege claims the County might assert

14   in a detailed privilege log.

15           The County's objections to Requests 8 and 9 based on Taylor's privacy interests and

16   § 1043 are overruled for the same reasons discussed for Request 3.

17                                    **<u>ORDER</u>**

18           Accordingly, it is hereby ORDERED THAT:

19   1.  Plaintiff's motion to compel discovery from non-party the County of Shasta (ECF No. 10)

20       is GRANTED IN PART and DENIED IN PART as follows:

21           a.  The motion is denied without prejudice as to Request Nos. 10–17.

22           b.  The motion is granted as to **Request No. 1**, which is rephrased to request: "Data

23               from the Spillman vehicle tracking system showing the position and/or speeds of

24               vehicles driven by all Shasta County Sheriff's DEPUTIES who responded to the

25               same possible trespassing call that Defendant TAYLOR was responding to at the

26               time of the COLLISION."

27           c.  The motion is granted as to **Request No. 2**.

28   ///

    d.  The motion is granted as to **Request No. 3**, which is limited to any documents within Taylor's personnel file reflecting (A) Taylor being reprimanded or disciplined for any purpose and (B) any internal or external complaints regarding Taylor's conduct as a SCSD deputy.

        i.  Names of private citizens mentioned therein shall be redacted.

    e.  The motion is granted as to **Request No. 4**, which is rephrased to request: "All DOCUMENTS that contain notations regarding Defendant Taylor's improper operation of a PATROL CAR at any time."

    f.  The motion is granted as to **Request No. 5**, which is rephrased to request: "All DOCUMENTS that refer or relate to any motor vehicle accident or incident where a PATROL CAR operated by Defendant TAYLOR caused damage to a person or property."

    g.  The motion is granted as to **Request Nos. 6–9**.

2.  **Within 30 days of this order**, the County of Shasta shall produce documents responsive to the above-granted subpoena requests.  Production shall be subject to a forthcoming stipulated protective order to be presented to the court for approval.

Dated:  May 26, 2022

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

corb.1998

14