1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                          ----oo0oo----

11

12   WESLEY CORBERA, as executor of      No. 2:21-cv-01998 WBS KJN
     the estate of Harrison Carmel
13   Breedlove, deceased,

14                 Plaintiff,            MEMORANDUM AND ORDER RE:
                                         DEFENDANT COUNTY OF SHASTA'S
15        v.                             MOTION TO DISMISS

16   HENRY JAMES TAYLOR, COUNTY OF
     SHASTA, and DOES 1 through 10,
17
                  Defendants.
18

19                          ----oo0oo----

20

21        Plaintiff Wesley Corbera, as personal representative of

22   the estate of decedent Harrison Carmel Breedlove and trustee for

23   the estate of decedent's mother Patricia Breedlove, brought this

24   § 1983 action against defendants Henry James Taylor and the

25   County of Shasta.  Plaintiff seeks survival and wrongful death

26   damages for an alleged violation of substantive due process under

27   the Fourteenth Amendment.  (First Am. Compl. ("FAC") (Docket No.

28   1).)  Defendant County of Shasta now moves to dismiss plaintiff's

                                   1

1   entire First Amended Complaint pursuant to Federal Rule of Civil

2   Procedure 12(b)(6).  (Docket No. 32 ("Mot.").)

3   I.   Factual and Procedural Background[1]

4        Defendant Henry James Taylor was a deputy at the Shasta

5   County Sheriff's Department.  (FAC ¶ 26.)  On or about November

6   6, 2019 at 6:31 p.m., the Shasta Area Safety Communications

7   Agency received a 911 call reporting that individuals who were

8   only authorized to be at a vacant house during daylight hours

9   were there after dark.  (Id. ¶ 38.)  The caller stated, "I don't

10  think it's an emergency."  (Id. ¶ 39.)  At 7:51 p.m.--over an

11  hour later--a Shasta County Sheriff's deputy was assigned to

12  respond to the call, which dispatch classified as a "possible

13  602," indicating misdemeanor trespassing.  (Id. ¶ 41.)  Around

14  the same time, a second deputy volunteered to proceed to the

15  house as backup.  (Id. ¶ 42.)  Neither deputy considered the call

16  an emergency.  (Id. ¶¶ 41-42.)

17       At 7:53 p.m., a dispatcher inquired whether defendant

18  Taylor was available to act as additional backup, and Taylor

19  accepted the assignment.  (Id. ¶¶ 43-44.)  On his way to the

20  house, Taylor stopped at a red light for approximately one

21  minute.  (Id. ¶ 57.)  He thereafter turned onto State Route 299

22  and accelerated his vehicle, reaching speeds of over 100 miles

23  per hour in an area with a posted speed limit of 55 miles per

24  hour.  (Id. ¶ 58.)  Taylor did not follow the statutory and

25  regulatory requirements for responding "Code 3," under which law

26  enforcement officers are permitted to violate traffic regulations

27

28       [1]   All facts recited herein are as alleged in the First
    Amended Complaint unless otherwise noted.

2

1    in order to more quickly respond to an emergency.  (See id. ¶¶

2    19-20, 45-46, 53-54.)  Specifically, Taylor did not inquire

3    whether the call was an emergency and did not inform the

4    dispatcher he intended to respond on a "Code 3" basis.  (Id. ¶¶

5    45-46, 53-54.)  He did not turn on his vehicle's flashing lights

6    or sirens.  (Id. ¶ 56.)

7            After passing a "Deer Crossing" sign on Route 299,

8    Taylor struck and killed a deer while traveling over 109 miles

9    per hour.  (Id. ¶ 46.)  Taylor lost control of the vehicle and

10    crossed the center line into oncoming traffic.  (Id. ¶¶ 47-48.)

11    At approximately 8:00 p.m., Taylor, driving at over 105 miles per

12    hour, struck an oncoming vehicle in which Harrison Breedlove was

13    a passenger.  (Id. ¶¶ 50-51.)  Breedlove later died due to

14    injuries sustained during the collision.  (Id. ¶ 52.)  Taylor

15    stated in an interview after the incident that his conduct was

16    justified by a need to catch up to the deputies he was backing

17    up.  (Id. ¶ 71.)

18            Plaintiff filed a negligence action against defendants

19    in Shasta County Superior Court in August 2020.  (See Ex. A to

20    Decl. of Nicholas Pyle (Docket No. 32-2).)  Criminal proceedings

21    were also brought against defendant Taylor.  (See Ex. D to Decl.

22    of Nicholas Pyle (Docket No. 32-5).)  The state court case has

23    been stayed pending resolution of the criminal proceedings.[2]

24    (Id.)[3]

25       [2]    Despite the pending criminal action, defendant has not
requested that this case be stayed.

26

27       [3]    To the extent that the parties request that the court
take judicial notice of the existence of various filings in
plaintiff's state court action (Docket No. 32-6) and the criminal

28    charges filed against defendant Taylor (Docket No. 34-2), the

1    II.   Legal Standard

2          Federal Rule of Civil Procedure 12(b)(6) allows for

3    dismissal when the plaintiff's complaint fails to state a claim

4    upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).

5    "A Rule 12(b)(6) motion tests the legal sufficiency of a claim."

6    The inquiry before the court is whether, accepting the

7    allegations in the complaint as true and drawing all reasonable

8    inferences in the plaintiff's favor, the complaint has alleged

9    "sufficient facts . . . to support a cognizable legal theory,"

10   id., and thereby stated "a claim to relief that is plausible on

11   its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

12         Courts are not, however, "required to accept as true

13   allegations that are merely conclusory, unwarranted deductions of

14   fact, or unreasonable inferences."  Sprewell v. Golden State

15   Warriors, 266 F.3d 979, 988 (9th Cir. 2001); see Bell Atl. Corp.,

16   550 U.S. at 555.  Accordingly, "for a complaint to survive a

17   motion to dismiss, the non-conclusory 'factual content,' and

18   reasonable inferences from that content, must be plausibly

19   suggestive of a claim entitling the plaintiff to relief."  Moss

20   v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quoting

21   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

22   III. Discussion

23         Although § 1983 is not itself a source of substantive

24   rights, it provides a cause of action against any person who,

25   under color of state law, deprives an individual of federal

26   _____

27   requests are GRANTED.  See Burbank-Glendale-Pasadena Airport
     Auth. v. City of Burbank, 136 F.3d 1360, 1364 (9th Cir. 1998).
     However, those documents do not ultimately affect the court's
28   conclusions.

4

1  constitutional or statutory rights.  42 U.S.C. § 1983; <u>Graham v.</u>

2  <u>Connor</u>, 490 U.S. 386, 393-94 (1989).  Here, the federal right

3  that plaintiff seeks to vindicate stems from the substantive

4  component of the Fourteenth Amendment's Due Process Clause.

5          Substantive due process "forbids the government from

6  depriving a person of life, liberty, or property in such a way

7  that 'shocks the conscience' or 'interferes with the rights

8  implicit in the concept of ordered liberty.'"  <u>Corales v.</u>

9  <u>Bennett</u>, 567 F.3d 554, 568 (9th Cir. 2009) (quoting <u>United States</u>

10 <u>v. Salerno</u>, 481 U.S. 739, 746 (1987)) (internal citation

11 omitted).

12          There are two culpability standards that dictate

13 whether conduct sufficiently "shocks the conscience" to establish

14 a due process violation.  See <u>Porter v. Osborn</u>, 546 F.3d 1131,

15 1137 (9th Cir. 2008).  Defendant argues that the "intent to harm"

16 standard controls here, while plaintiff argues that the lower

17 "deliberate indifference" standard applies.

18          In <u>County of Sacramento v. Lewis</u>, 523 U.S. 833 (1998),

19 the Supreme Court considered a substantive due process claim

20 premised on a police car chase that resulted in the plaintiff's

21 death.  The officer engaged in a high-speed pursuit of a

22 motorcycle, which reached speeds up to 100 miles per hour.  <u>Id.</u>

23 at 836-37.  In determining whether the officer's conduct "shocked

24 the conscience," the court rejected the deliberate indifference

25 standard applied by the lower court.  See <u>id.</u> at 854.  The court

26 held that "high-speed chases with no intent to harm suspects

27 physically or to worsen their legal plight do not give rise to

28 liability" for a deprivation of substantive due process under the

1 Fourteenth Amendment.  See id.

2          The Lewis court likened a police officer in a high-

3 speed chase to the prison officials responding to a prison riot

4 in Whitley v. Albers, 475 U.S. 312 (1986).  In Whitley, the

5 officers were not liable under the Eighth Amendment for a

6 shooting that occurred while responding to the riot.  Id. at 326.

7 The Lewis court reasoned that both a police pursuit and a prison

8 riot necessitate "fast action" and require officers to balance

9 "obligations that tend to tug against each other."  Lewis, 523

10 U.S. at 853.  Officers in each scenario "are supposed to act

11 decisively and to show restraint at the same moment, and their

12 decisions have to be made 'in haste, under pressure, and

13 frequently without the luxury of a second chance.'"  Id. (quoting

14 Whitley, 475 U.S. at 320).  In such circumstances, the higher

15 intent to harm standard is appropriate.  See id.

16          The Lewis court contrasted these circumstances with

17 DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189

18 (1989), where prison officials faced Eighth Amendment liability

19 under a deliberate indifference standard for failing to provide

20 medical care to prisoners.  Lewis, 523 U.S. at 851-52.  There,

21 officers "[had] time to make unhurried judgments, upon the chance

22 for repeated reflection, largely uncomplicated by the pulls of

23 competing obligations."  Id. at 853.  In such cases where "actual

24 deliberation is practical," "deliberate indifference can rise to

25 a constitutionally shocking level."  See id. at 851-52.

26          The Ninth Circuit has applied Lewis's reasoning to a

27 variety of cases involving police conduct, indicating that the

28 intent to harm standard applies whenever an officer confronts an

emergency requiring fast action in the face of competing

obligations.  See Bingue v. Prunchak, 512 F.3d 1169, 1176 (9th

Cir. 2008) (because high-speed chases are by their nature

"genuine emergenc[ies]" requiring officers to "make repeated

split-second decisions about how best to apprehend the fleeing

suspect in a manner that will minimize risk to their own safety

and the safety of the general public," an intent to harm standard

applies and officer did not violate substantive due process

rights by causing collision during high-speed chase); Porter, 546

F.3d at 1139 (because Lewis and Ninth Circuit precedent "require

[that the purpose to harm standard apply] when an officer

encounters fast paced circumstances presenting competing public

safety obligations," officer did not violate substantive due

process rights by shooting suspect during five-minute, "quickly

evolving and escalating" altercation); Moreland v. Las Vegas

Metro. Police Dep't, 159 F.3d 365, 372-73 (9th Cir. 1998) (under

Lewis, officers "did not violate the plaintiffs' substantive due

process rights to family association when [they] accidentally

shot and killed [an alleged bystander], because the officers were

responding to the extreme emergency of public gunfire and did not

intend to commit any harm unrelated to the legitimate use of

force necessary to protect the public and themselves").

          The Ninth Circuit has also explained that, based on

Lewis, the key consideration in determining whether the

deliberate indifference standard applies to a substantive due

process claim is whether "'actual deliberation is practical.'"

See Porter, 546 F.3d at 1137 (quoting Lewis, 523 U.S. at 851);

Moreland, 159 F.3d at 372 (same); Zion v. Cnty. of Orange, 874

1  F.3d 1072, 1077 (9th Cir. 2017) (same); Wilkinson v. Torres, 610

2  F.3d 546, 554 (9th Cir. 2010) (same).

3        In Bingue v. Prunchak, 512 F.3d 1169 (9th Cir. 2008),

4  the Ninth Circuit considered a case involving a high-speed police

5  pursuit of a vehicle.  Following Lewis, the Bingue court held

6  that the intent to harm standard applies to "all high-speed

7  chases" involving police officers and rejected a distinction

8  between "emergency" and "non-emergency" police chases.  Id. at

9  1170–71, 1176 (emphasis added).  The court reasoned that "drawing

10 such an arbitrary distinction between 'emergency' and 'non-

11 emergency' situations discounts the split second decisions an

12 officer must make when deciding whether to engage in a high-speed

13 chase.  In such circumstances, officers must operate under great

14 pressure and make repeated split-second decisions about how best

15 to apprehend the fleeing suspect in a manner that will minimize

16 risk to their own safety and the safety of the general public."

17 Id. at 1176.  Further, "[t]he sheer velocity of a high-speed

18 chase necessarily converts each situation into a genuine

19 'emergency.'"  Id.  The Bingue court also followed Ninth Circuit

20 precedent requiring consideration of whether actual deliberation

21 was practical, reasoning that the deliberate indifference

22 standard was inappropriate because "[a]n officer attempting to

23 apprehend a suspect fleeing at high speed" has "no time for

24 reflection and precious little time for deliberation."  See id.

25       Relying on Bingue, defendant argues that the court

26 should mechanically apply the intent to harm standard here.

27 However, Bingue clearly limited its reasoning to cases involving

28 high-speed pursuits, which are by their nature considered

8

1   emergencies.  See 512 F.3d at 1170-71, 1176.  See also Lewis, 523

2   U.S. at 834 ("rules of due process are not subject to mechanical

3   application in unfamiliar territory," but rather require "an

4   exact analysis of context and circumstances").

5          Defendant also argues that this court's prior decision

6   in Suit v. City of Folsom supports its position.  Suit was a

7   straightforward application of Bingue to a high-speed car chase

8   and is similarly inapposite.  See Case No. 2:16-00807 WBS, 2016

9   WL 6696060, at *3 (E.D. Cal. Nov. 14, 2016) (applying intent to

10  harm standard in case involving police car chase of a suspect

11  that was driving "reckless[ly]" because "Ninth Circuit precedent

12  . . . holds the intent to harm standard applies to all high-speed

13  chases") (citing Bingue, 512 F.3d at 1177) (emphasis added).

14  Defendant emphasizes that the car chase in Suit occurred after

15  the officer pulled over the suspect on a "cold" misdemeanor.  See

16  id., at *1.  However, under Bingue, it is not the underlying

17  reason for the chase that matters, but rather the fact that the

18  officer is engaging in a chase at all, which is necessarily

19  preceded by a quick decision to engage.  See Bingue, 512 F.3d at

20  1167.

21         In contrast to Bingue and Suit, the instant case

22  involves a police officer merely driving, not engaging in a car

23  chase.  The Ninth Circuit has contrasted the high-speed chases

24  contemplated by Bingue, to which the intent to harm standard

25  applies, with the type of non-emergency situations discussed in

26  Lewis that are appropriately considered under a deliberate

27  indifference standard.  See Porter, 546 F.3d at 1139.

28         To determine which standard to apply, the court must

1    evaluate whether "actual deliberation is practical" where a

2    police officer drives a vehicle in a non-emergency, non-pursuit

3    context, such that the deliberate indifference standard applies.

4    See id. at 1137.   While the parties have not identified, nor has

5    the court found, any binding on-point authority, other circuits

6    have confronted this question.   In Browder v. City of

7    Albuquerque, the Tenth Circuit--in an opinion authored by then-

8    Judge Gorsuch--applied the deliberate indifference standard in a

9    case involving a collision caused by an officer who sped and ran

10   red lights while neither in pursuit nor facing an emergency.   787

11   F.3d 1076, 1080-81 (10th Cir. 2015) (Gorsuch, J.).   The court

12   reasoned that while "Lewis held specific intent may be required

13   to suggest arbitrary or conscience-shocking behavior in cases

14   where the officer has been asked to respond to emergencies of

15   citizens in need," it "never suggested that such a demanding form

16   of mens rea is necessary or appropriate . . . in cases where the

17   officer isn't pursuing any emergency" such that "forethought is

18   feasible."   See id. at 1080-81.   Affirming the district court's

19   denial of a motion to dismiss, the court found that, accepting

20   the plaintiff's allegations as true, the officer's conduct

21   constituted deliberate indifference.   See id. at 1077, 1082.

22        Both the Fourth and Seventh Circuits came to similar

23   conclusions.[4]   In Flores v. City of South Bend, the Seventh

24        [4]    The parties also discussed Sauers v. Borough of
     Nesquehoning, 905 F.3d 711 (3d Cir. 2018).   However, this case is
25   not on point.   Sauers involved an officer pursuing a suspect in
     his vehicle (i.e., a car chase).   See 905 F.3d at 715.   The
26   differences noted by defendant between the Third Circuit's
     reasoning in Sauers and the Ninth Circuit's decision in Bingue
27   concerning whether emergency/non-emergency distinctions are
     appropriate in cases involving car chases, see id. at 718, are
28   therefore irrelevant here.

1   Circuit applied the deliberate indifference standard where the

2   officer's conduct in driving between 78 and 98 miles per hour in

3   an area with a posted speed limit of 30 miles per hour was

4   "unjustified by any emergency."  997 F.3d 725, 730 (7th Cir.

5   2021).  The court reasoned that "[i]dentical behavior considered

6   reasonable in an emergency situation" might nonetheless establish

7   liability "when state actors have time to appreciate the effects

8   of their actions."  Id. at 729 (citing Lewis, 523 U.S. at 850).

9   As such, the officer's conduct as alleged by the plaintiff

10  constituted deliberated indifference and denial of a motion to

11  dismiss was appropriate.  See id. at 734.

12          In Dean v. McKinney, the Fourth Circuit applied the

13  deliberate indifference standard in a case involving an officer

14  who was driving 38 miles per hour over the speed limit while

15  responding to a non-emergency call.  976 F.3d 407, 412, 415-16

16  (4th Cir. 2020).  The court, also relying on Lewis, explained

17  that "when an officer is able to make unhurried judgments with

18  time to deliberate, such as in the case of a non-emergency,

19  deliberate indifference is the applicable culpability standard

20  for substantive due process claims involving driving decisions."

21  Id. at 415 (citing Lewis, 523 U.S. at 853).  The Fourth Circuit

22  affirmed the district court's finding that "a reasonable jury

23  could conclude that [the officer] violated [the plaintiff's]

24  substantive due process right."  Id. at 413.[5]

─────────────

25      [5]    Defendant argues that the Eighth Circuit's decision in
    Sitzes v. City of West Memphis Arkansas, 606 F.3d 461 (8th Cir.
26  2010), supports its position.  The court disagrees.  In Sitzes,
    the officer caused a collision while responding to a call that
27  plaintiff argued was not factually an emergency, while defendant
    presented evidence that the officer subjectively believed it to
28  be an emergency.  Id. at 468.  The Eighth Circuit rejected

                                  11

1          Based on <u>Lewis</u>, Ninth Circuit precedent, and multiple

2    on-point circuit decisions, the court concludes that the

3    deliberate indifference standard applies to substantive due

4    process claims premised on a police officer's driving in a non-

5    emergency, non-pursuit context.  See <u>Lewis</u>, 523 U.S. at 851, 853;

6    <u>Porter</u>, 546 F.3d at 1139; <u>Browder</u>, 787 F.3d at 1080-81; <u>Flores</u>,

7    997 F.3d at 729; <u>Dean</u>, 976 F.3d at 415.  Chief Judge Mueller of

8    this court previously came to the same conclusion in a case that

9    involved "no allegation of a high-speed chase rather only high-

10   speed driving."  See <u>McGowan v. County of Kern</u>, No. 1:15-cv-01365

11   KJM SKO, 2016 WL 159232, at *5 (E.D. Cal. Jan. 13, 2016)

12   (explaining that if the officer "faced no true emergency and so

13   had a practical opportunity to consider slowing for a red light

14   and checking for other traffic," the plaintiffs could state a

15   substantive due process claim "under a theory of deliberate

16   indifference").

17          The court next considers whether plaintiff has

18   sufficiently pled facts indicating that Taylor did not face an

19   emergency and had time to deliberate on his actions such that he

20

21   plaintiff's arguments that the situation was not a true emergency
     and applied the intent to harm standard.  It based its reasoning
     on prior Eighth Circuit precedent holding that "substantive due
22   process liability turns on the intent of the government actor"
     and thus "forecloses inquiry into the objective nature of the
23   emergency."  <u>Id.</u> (citing <u>Terrell v. Larson</u>, 396 F.3d 975, 980
     (8th Cir. 2005)).  The Ninth Circuit does not appear to follow a
24   similar rule.  See <u>Brittain v. Hansen</u>, 451 F.3d 982, 991, 998
     (9th Cir. 2006) (considering "objective reasonableness" of
25   officer's conduct in analyzing substantive due process claim
     under "shocks the conscience" standard).  As such, the reasoning
26   in <u>Sitzes</u> is not persuasive.
           At any rate, as discussed below, the facts as alleged
27   by plaintiff suggest that Taylor did not subjectively believe the
     call to be an emergency.  Thus, even if the court were to adopt
28   the rule applied in <u>Sitzes</u>, the result here would be the same.

12

1  was deliberately indifferent.  Here, plaintiff does not allege--

2  and defendant does not argue--that the call was factually an

3  emergency.  Plaintiff alleges that the misdemeanor trespassing

4  call was both described by the caller as a non-emergency and

5  classified as a non-emergency by dispatch when communicating with

6  the responding officers.  (FAC ¶¶ 39, 41.)  Dispatch did not tell

7  Taylor that the call was an emergency, and the two other

8  responding officers did not believe the call to be an emergency.

9  (Id. ¶¶ 41-42.)  Although Taylor stated that his conduct was

10  justified by a need to catch up to the deputies he was backing up

11  (id. ¶ 71), the facts as alleged by plaintiff suggest that he did

12  not subjectively believe the call was an emergency; Taylor waited

13  for approximately one minute at a stoplight while en route and

14  did not follow the required protocols for responding on an

15  emergency basis by failing to confirm the call's emergency status

16  with dispatch and activate his lights and sirens.  (See id. ¶¶

17  53-57.)

18          Plaintiff alleges that approximately seven minutes

19  elapsed between the time Taylor agreed to respond to the call and

20  the time of the collision (see id. ¶¶ 43, 50), which tends to

21  show that he had sufficient time to deliberate.  See Dean, 976

22  F.3d at 416 (trier of fact could find that officer had "ample

23  time to consider" his actions during two minutes and fifteen

24  seconds that elapsed between notification that the call was not

25  an emergency and the collision); Browder, 787 F.3d at 1082 (trier

26  of fact could find that officer had adequate time to deliberate

27  during eight minutes that elapsed between the time he started

28  speeding and the collision).  Taylor's conduct in waiting at a

1  stop light for nearly a minute while responding to the call

2  further supports this inference.   (See FAC ¶ 57.)

3          The court therefore finds that plaintiff has alleged

4  facts tending to show that Taylor was facing a non-emergency

5  situation in which he had time to deliberate on his actions.   As

6  such, plaintiff has sufficiently stated a substantive due process

7  claim under a theory of deliberate indifference.

8          IT IS THEREFORE ORDERED that defendant County of

9  Shasta's motion to dismiss (Docket No. 32) be, and the same

10  hereby is, DENIED.

11  Dated:   December 15, 2022

WILLIAM B. SHUBB
12  UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28